IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RICHARD A. MONTANO,

    Plaintiff,

    v.

KAW VALLEY BANK,

    Defendant.

Case No. 5:23-cv-04100-HLT-ADM

## MEMORANDUM AND ORDER

This is an employment dispute. Plaintiff Richard Montano sued his former employer Kaw Valley Bank under several federal employment statutes. Defendant Kaw Valley Bank counterclaimed for promissory estoppel based on an allegedly broken promise Montano made to retire in 2022. Montano moves to dismiss Kaw Valley's counterclaim under Rule 12(b)(6). Doc. 10. Montano argues the promise at issue was not sufficiently definite, Kaw Valley did not reasonably rely on it, and there was no injustice because Kaw Valley fired him before the end of 2022 anyway. The Court denies Montano's motion because Kaw Valley's promissory-estoppel counterclaim includes sufficient factual allegations to plausibly state a claim for relief.

**I.    BACKGROUND**[1]

Montano was Kaw Valley's Compliance and Bank Secrecy Act Officer. Doc. 7 at 13. Montano was aware that he had a critical position for which succession planning was necessary. *Id.* Montano approached Kaw Valley's president and chief executive Craig Heideman during the fourth quarter of 2021 and told him he intended to retire at some point in 2022. *Id.* Montano did

---

[1] For purposes of evaluating the motion to dismiss, the Court accepts as true the well-pleaded allegations in the counterclaim. *See* Doc. 7 at 13-18.

not specify an exact date. *Id.* Heideman believed Montano could choose to retire at "any time in 2022," and therefore immediate succession planning was necessary. *Id.*

Kaw Valley's Senior Management Committee discussed Montano's impending retirement at a meeting in January 2022. *Id.* Montano was a member of that committee and received the minutes from the January 2022 meeting. *Id.* After circulation of those minutes, Montano did not tell Kaw Valley he was not actually planning to retire. *Id.*

In reliance on Montano's promise, Kaw Valley posted an opening for Montano's job in April 2022 and started identifying and interviewing prospective candidates. *Id.* at 14. Kaw Valley's human resources director made Montano aware of the job posting. *Id.* Montano asked the HR director what would happen if he no longer planned to retire. *Id.* The HR director told Montano that the succession process had started, and he needed to notify Heideman if he had changed his mind. *Id.* Montano said he "would not be speaking to Mr. Heideman." *Id.* Montano later told another Kaw Valley employee that the company posted his job without telling him and that Kaw Valley was forcing him to retire. *Id.* Montano later said he made the statement about the job posting because he thought it was confidential. *Id.*

In June 2022, Montano asked to meet with Heideman to discuss his retirement. *Id.* Montano also asked to attend an ABA Regulatory Compliance Conference later that month. *Id.* Kaw Valley paid for Montano to attend the conference so that he would obtain updated compliance knowledge to share with his successor. *Id.* at 15. It was common practice at Kaw Valley for a retiree to assist in training his successor before leaving. *Id.*

In July 2022, Heideman sent Montano the resumes of the two top candidates to succeed him. *Id.* Montano met with one candidate, and he spoke with the other and indicated he'd had a good discussion. *Id.* Montano, again, did not indicate he no longer intended to retire in 2022. *Id.*

Kaw Valley hired Montano's successor in July 2022. *Id.* She was scheduled to begin working with Montano in October 2022. *Id.* Heideman told Montano this information and asked to meet to discuss the transition. *Id.* At that meeting, which occurred in August 2022, Montano told Heideman he no longer intended to retire that year. *Id.* Montano instead mentioned the first quarter of 2023 as a possible retirement date so he could receive additional pay and bonuses. *Id.* at 16. Montano also offered to retire sooner if Kaw Valley provided an acceptable severance package. *Id.*

Heideman offered to let Montano work on either a full- or part-time basis until the end of the year while the new compliance officer transitioned into the job. *Id.* Kaw Valley also offered Montano a severance payment of $10,000 if he stayed in his job until the end of November 2022. *Id.* Montano responded with a letter from an attorney stating he was being forced into retirement against his wishes because of his age. *Id.* Montano offered a termination date of October 31, 2022, and requested a severance payment of $109,166.67. *Id.* Kaw Valley was willing to match that date but not the monetary demand. *Id.*

Kaw Valley terminated Montano on September 12, 2022. *Id.*

## II. LEGAL STANDARD

The same pleading standard that applies to a plaintiff's claims applies to counterclaims by a defendant. *See Gemcor II, LLC v. Electroimpact Inc.*, 2012 WL 628199, at * 1 (D. Kan. 2012). A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). A plausible claim is one with enough facts for the court to infer "the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility," but it "is not akin to a 'probability requirement.'" *Id.*

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation and citation omitted). On a motion to dismiss a court ignores a complaint's legal conclusions and assumes the truth of the complaint's well-pleaded non-conclusory factual allegations *Id.* at 678-79. It also views any reasonable inferences to be drawn from a complaint in a way that is favorable to the plaintiff. *Nobel v. Steadfast Ins. Co.*, 85 F.4th 1018, 1025 (10th Cir. 2023).

### III.     ANALYSIS

Kansas recognizes "promissory estoppel" as a cause of action sounding in equity. *Bouton v. Byers*, 321 P.3d 780, 787 (Kan. Ct. App. 2014). Promissory estoppel is designed to enforce "some measure of basic fairness when one party makes a representation or promise in a manner reasonably inducing another party to undertake some obligation or to incur some detriment as a result." *Id*. Promissory estoppel has three elements: "(1) a promisor reasonably expects a promisee to act in reliance on a promise; (2) the promisee, in turn, reasonably so acts; and (3) a court's refusal to enforce the promise would countenance a substantial injustice." *Id.*; *see also Team Indus. Servs., Inc. v. Zurich Am. Ins. Co.*, 87 F.4th 461, 469 (10th Cir. 2023). "Because promissory estoppel rests on fairness, its application tends to be especially fact driven and, thus, defies any regimented predictive test." *Bouton*, 321 P.3d at 787.

Montano argues Kaw Valley's counterclaim for promissory estoppel should be dismissed with prejudice because (1) Kaw Valley hasn't pleaded a sufficiently definite promise by Montano, (2) Kaw Valley's reliance on any statement by Montano was unreasonable, and (3) Kaw Valley has not pleaded an injustice. Doc. 10 at 5-9.

### A.   Sufficiently Definite Promise

Montano's first argument is that Kaw Valley did not plead any facts showing a sufficiently definite promise. He contends his statement that he "intended" to retire in 2022 was not definite enough because it was a casual statement of "a potential plan subject to a myriad of changes depending on future events." *Id.* at 5-6. Kaw Valley argues Montano's statement gave a sufficiently definite time frame for his retirement. *See* Doc. 12 at 4-5.

A promise must be sufficiently definite and particular to sustain a promissory-estoppel claim. *Bouton*, 321 P.3d at 787-88. "To the extent the promisee relies on equity to specifically enforce the promise or recover damages equivalent to the promised performance, the promise itself must define with sufficient particularity what the promisor was to do." *Id.* This is a fact-intensive inquiry, *see id.* at 787, and it is sufficient if a court can discern <u>what</u> act is to be performed and <u>when</u> performance is complete, *see id.* at 788.

The Court agrees with Kaw Valley that the alleged promise was sufficiently definite. Kaw Valley has alleged that Montano stated he intended to retire (the act to be performed) in 2022 (when). The Court can discern what act was to be performed and by when. *See id.* at 787-88. This is sufficient to support a plausible claim for relief. Montano may argue the promise was too indefinite to have been reasonably relied upon. *See id.* at 788 (noting that "the indefiniteness of the purported promise [can be] a factor in assessing reasonableness for purposes of applying promissory estoppel"). But the Court finds that the promise was not so indefinite as to preclude a claim for promissory estoppel as a matter of law.

### B.   Reasonableness of Reliance

Montano's second argument is that Kaw Valley could not have reasonably relied on the alleged promise because, as pleaded, (1) Montano twice expressed uncertainty about retiring, and

(2) Montano asked and was approved to attend a conference in June 2022, and (3) Kaw Valley terminated his employment before his replacement started. Doc. 10 at 6-7. Kaw Valley responds that reasonableness is a fact-intensive inquiry and that there are other facts alleged showing it did reasonably rely on Montano's promise. Doc. 12 at 6.

Kaw Valley is correct that this is a fact-intensive inquiry. *See Bouton*, 321 P.3d at 787-88. The Court finds there are sufficient facts alleged at this stage to show reasonable reliance by Kaw Valley. Although Montano expressed some uncertainty about retiring, he was told to speak up if he had changed his mind, but he did not do so. He was allowed to attend a conference, but Kaw Valley alleges this was so he could obtain new information to pass along to his successor. He otherwise participated in the selection of his successor. And his termination came only after the parties' discussions about severance broke down. The Court finds Kaw Valley has pleaded sufficient facts to overcome a motion to dismiss on this point.

### C.     Allegations of Injustice

Montano's third argument is that Kaw Valley cannot meet the "injustice" element of a promissory-estoppel counterclaim because its harms were all self-inflicted. Doc. 10 at 7-8. This is because Kaw Valley fired him before his "expected performance on his alleged promise" and because it fired him before his successor's start date. *Id.*

Neither side's argument on this point is well-developed or clear, and the Court does not discern any grounds to dismiss the counterclaim. At bottom, Kaw Valley alleges Montano promised to retire, and then, despite extensive succession planning and the hiring of a replacement, Montano suggested he might not be willing to retire after all. Although Kaw Valley eventually fired him, this was after negotiations about severance fell apart. Montano has now sued for

wrongful termination. Under these facts, the Court cannot find that Kaw Valley's counterclaim for promissory estoppel based on the promised retirement is implausible.

THE COURT THEREFORE ORDERS that Plaintiff's Motion to Dismiss Defendant's Counterclaim (Doc. 10) is DENIED.

IT IS SO ORDERED.

Dated: March 27, 2024                    /s/ *Holly L. Teeter*
                                         HOLLY L. TEETER
                                         UNITED STATES DISTRICT JUDGE